## HUGHES TOOL CO. v. A. F. SPENGLER CO. et al.

### No. 1658.

District Court, W. D. Oklahoma.
July 29, 1947.

Fisher Ames, of Ames, Ames & Daugherty, of Oklahoma City, Okl., for plaintiff.

Earl Pruet, of Richardson, Shartel, Cochran & Pruet, of Oklahoma City, Okl., for defendant.

VAUGHT, District Judge.

On December 11, 1946, the defendants filed a petition seeking to have the court modify and interpret paragraphs 1 and 2 of the final decree entered herein May 29, 1937, as follows:

"1. The preliminary injunction entered in this cause on October 19, 1934, be and same hereby is made permanent and perpetual against said defendant and each of them.

"2. A. F. Spengler and A. F. Spengler Company, a corporation, and its officers, agents, employees and attorneys and all persons or firms acting under the authority, direction or control of said A. F. Spengler are further permanently restrained and enjoined from manufacturing, selling or offering for sale cone cutters or roller earth boring drills in the following states: California, New Mexico, Wyoming, Colorado, Montana, Kansas, Oklahoma, Arkansas, Louisiana and Texas so long as plaintiff, its successors or assigns shall engage in the business of manufacturing or selling cone cutters or roller earth boring drills in any of said states; and said A. F. Spengler is further permanently restrained and enjoined from becoming connected with any corporation, firm or partnership, either through ownership of stock or as a director or officer or employee, which said corporation, firm or partnership is engaged in the business of manufacturing, selling or offering for sale cone cutters or roller earth boring drills in any of said states, so long as plaintiff, its successors or assigns shall engage in the business of manufacturing or selling cone cutters or roller earth boring drills in any of said states."

On November 30, 1932, in Cause Number 931–Equity, Hughes Tool Company v. A. F. Spengler Company, D.C., 73 F.Supp. 154, the court issued a final decree enjoining the defendant from infringing certain patents of Hughes Tool Company, paragraph IV reading as follows:

"That the defendant, A. F. Spengler Company, its officers, agents, servants, employees and associates and each and every one of them be and hereby are perpetually enjoined and restrained from making, using or selling in any manner, directly or indirectly, any devices patented in or by claims 3 and 4 of said Godbold and Fletcher Patent No. 1320384; claims 1, 2, 3 and 4 of the said Scott Patent No. 1480014 and claims 2, 3, 4 and 5 of the said Scott and Wellensiek Patent No. 1647753, or any devices capable of being used in infringement thereof, or capable of being combined with

any other device to be used in infringement thereof and from directly or indirectly infringing upon said claims of said Letters Patent, or any of them, in any manner whatsoever, or from aiding, abetting or contributing to any infringement thereof."

In said Cause Number 931–Equity, the final decree was based upon a contract between the parties in which they composed their differences and settled the litigation. In that contract it was agreed that the injunction should issue and become the final order in the case. Among other things in the contract, it was agreed that the defendant Spengler Company had infringed the patents of the plaintiff; that the defendant had certain materials on hand used in the manufacture of certain articles, and that the defendant was in the process of completing a contract with the Champlin Refining Company of considerable proportions. The plaintiff agreed to permit the defendant to complete that contract and agreed to pay the defendant $10,000 for the materials it had on hand, its good will and other considerations. The plaintiff agreed to abandon and yield its claim for damages for the infringement of the patents to the date of the agreement, and the defendant agreed to sell and transfer its good will in the business in connection with the articles so manufactured and to refrain from directly or indirectly making or selling "roller earth boring drills" in the states of California, New Mexico, Wyoming, Colorado, Montana, Washington, Oklahoma, Arkansas, Louisiana, Mississippi and Texas, so long as the plaintiff or any person, firm or corporation deriving title to said good will from the plaintiff carried on a like business in said states.

Later, this suit (No. 1658–Equity) was brought for an injunction based upon an alleged violation of the terms of said contract of November 22, 1932, which resulted in a decree on May 29, 1937, paragraphs 1 and 2 of which the defendants now seek to have modified and interpreted.

The defendants allege that the letters patent have expired; that the inventions covered by them have passed into the public domain and are no longer "subject to private barter, sale or waiver;" and that the words "perpetual," "permanent" and "permanently" should no longer have any binding effect since the patents have expired. Citing and largely relying upon Scott Paper Company v. Marcalus Manufacturing Company, Inc., et al., 326 U.S. 249, 66 S.Ct. 101, 90 L.Ed. 47, and cases cited therein.

The plaintiff has filed its motion to dismiss and strike the petition for modification and interpretation on the following grounds: 1. For want of leave to file. 2. For want of equity. 3. Said "petition" fails to state facts entitling the "petitioner" to any relief.

The defendants contend that they are entitled to the relief sought for the reason that the circumstances have so changed that the continuing restraints contained in the final decree of May 29, 1937, and the writ pursuant thereto, should now be terminated.

■ Injunctions are ordinarily designated as "temporary" or "permanent." A permanent or perpetual injunction against one who infringes a patent could exist only during the life of the patent. This is the uniform holding of our courts so far as this court has been able to determine.

In considering the petition the court must consider not only the decree in this cause, but also the contract of November 22, 1932 and the decree of November 30, 1932 pursuant thereto in Cause Number 931–Equity set out in the petition for modification and interpretation herein.

■ The only change of circumstances that is stressed by the defendants is the fact that the patents have expired. The defendants apparently have overlooked the fact that for a valuable and quite substantial consideration A. F. Spengler Company sold the good will in a business and agreed for a period of time to refrain from engaging again in that business in certain territory as provided in the contract of sale. The patents covering the articles of manufacture were not the prime elements. *The defendants knew how long the patents had*

*to run.* Nothing new or that could not have been foreseen at the time of the sale and the decree in Cause Number 931–Equity, has since occurred. The public has not been affected in the least by the transaction or is not now suffering any detriment from it.

The court has considered with careful interest the theory advanced by the defendants and the authorities cited to sustain it, but under the facts shown by the record is unable to see how they apply. The language used in United States v. Swift & Company et al., 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999, in a similar situation applies to the situation here, where Mr. Justice Cardozo said:

"There is need to keep in mind steadily the limits of inquiry proper to the case before us. We are not framing a decree. We are asking ourselves whether anything has happened that will justify us now in changing a decree. The injunction whether right or wrong, is not subject to impeachment in its application to the conditions that existed at its making. We are not at liberty to reverse under the guise of readjusting. * * * Nothing less than a clear showing of grievous wrong evoked by new and unforseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned.

" * * * Wisely or unwisely, they submitted to these restraints upon the exercise of powers that would normally be theirs. They chose to renounce what they might otherwise have claimed, and the decree of a court confirmed the renunciation and placed it beyond recall.

"What was then solemnly adjudged as a final composition of an historic litigation will not lightly be undone at the suit of the offenders, and the composition held for nothing."

It is quite clear that under the second and third grounds of the motion it should be sustained.

A form of judgment consistent with this opinion may be submitted within ten days from this date.